UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* <br> HEATHER RAMOS <br> <br> Plaintiffs, <br> <br> v. <br> <br> WATRY HOMES, LLC, and <br> SCOTT WATRY, <br> <br> Defendants. | Filed *In Camera* and under seal <br> pursuant to 31 U.S.C.§3730(b)(2) <br> <br> COMPLAINT FOR DAMAGES AND <br> INJUNCTIVE RELIEF UNDER 31 <br> U.S.C. § 3729 et seq. FEDERAL <br> FALSE CLAIMS ACT <br> <br> Jury Trial Demanded |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
UNDER 31 U.S.C. § 3729 ET SEQ. FALSE CLAIMS ACT**

NOW COMES Heather Ramos Plaintiff/Relator, through her attorneys Cross Law Firm, S.C., by Nola J. Hitchcock Cross and Katherine M. Gaumond, and as and for a complaint against Defendants, Watry Homes and Scott Watry, states the following:

### INTRODUCTION

1. This is brought on behalf of the United States of America against Watry Homes, LLC and Scott Watry who, after bragging that they were going to get "Obama money", submitted knowingly false claims though a scheme to defraud the Government by violating prevailing wage requirements, utilizing undocumented workers, and falsifying documents related to construction work including roofing, siding, gutters, window and door installation, insulation, and hardwood flooring through contracts awarded pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200-02.

2. Relator Heather Ramos brings this action for herself and on behalf of the United States of America pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"). This is an action for injunctive relief and to recover damages and civil penalties arising from false claims and false certifications and documents made or caused to be made to the United States and their agents and intermediaries in violation of the aforementioned statute.

## I. PARTIES

3. Relator, Heather Ramos ("Relator" or "Ramos"), is a United States citizen and a resident of this judicial district residing in the State of Wisconsin, County of Milwaukee.

4. Defendant, Watry Homes, LLC ("Watry Homes") is a limited liability corporation formed in 2001, with its principal place of business located at 17790 Liberty Lane, New Berlin Wisconsin 53146. Watry Homes' principle officer is Scott Watry.

5. Defendant Scott Watry is a resident of this judicial district residing in the State of Wisconsin, County of Waukesha, City of New Berlin, 19900 W Pinecrest Lane, 53146. Hereinafter Defendants are jointly referred to as "Watry".

## II. JURISDICTION AND VENUE

6. Ramos brings this action is brought on behalf of the United States pursuant to 31 U.S.C. § 3730(b)(1).

7. This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this court for actions brought pursuant to 31 U.S.C. § 3730.

8. The Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Watry transacts business in this district.

9. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Watry transacts business in this district.

10. Before filing, Relator communicated with the U. S. Department of Justice ("DOJ") to provide information and notify the Department that she was intending to file this action.

11. Relator submitted Disclosure Materials to the DOJ and she served this Complaint on the United States Attorney General and the U.S. Attorney for the Eastern District of Wisconsin.

## III. STATEMENT OF THE ACTION

12. Defendants violated 31 U.S.C. § 3729(a)(1)(A) & (B) of the FCA by scheming to obtain federal funds by falsifying payroll reports to the government to make it appear, contrary to Watry's actual conduct, that Defendants had paid required hourly prevailing wages to laborers who were eligible to work in the U.S.

13. Defendants violated the Anti-Kickback Statute ("AKS") 18 U.S.C. § 874 by failing to pay employees prevailing wage and concealing same. Defendants violated 31 U.S.C. § 3729(a)(1)(C) by conspiring with each other and Jose Luis Campos Flores ("Campos Flores") to falsify payroll and other reports submitted to the government as a condition of payment. Defendants engaged in labor racketeering by conspiring to obtain federal funds through fraudulent labor practices.

14. Defendants violated 31 U.S.C. § 3729(a)(1)(G) & (H) by falsifying financial reports to the government and by retaining unearned government funds after Ramos told Defendants they were defrauding the government by utilizing undocumented workers and paying workers in violation of prevailing wage laws and that she would not be part of it.

3

15. After Ramos attempted to stop Watry from defrauding the Government, Watry retaliated against her by terminating her employment and business relationship with Watry.

16. This action is brought on behalf of the United States of America to recover all damages, penalties and other remedies established by and pursuant to the FCA, and Heather Ramos claims entitlement to a portion of any recovery obtained by the United States as *qui tam* Plaintiff authorized by the FCA.

## IV. GENERAL FACTS

### A. Defendants

17. Watry Homes, owned by Scott Watry, is a construction concern that performs roofing, siding, gutters, windows, doors, hardwood flooring, and insulation repair and construction.

18. In or around 2011, Watry Homes became a subcontractor on various government projects, through HOME dollars, which are Federal block grants to States and localities used in partnership with local nonprofit groups to build, buy, and/or rehabilitate affordable housing for rent or homeownership; Department of Housing and Urban Development ("HUD") block grants, or federal tax credits through Wisconsin Housing and Economic Development Authority (WHEDA). Each project required that workers be paid prevailing wage rates.

19. The Davis-Bacon Act 40 U.S.C. § 3141 *et. seq.* requires that Government construction contractors and subcontractors pay their employees based on hourly prevailing wage rates to prevent bidding based on lowing wage rates.

20. To qualify for construction projects subject to Davis-Bacon, contractors must certify that each laborer is paid not less than the applicable prevailing hourly wage rates. In the

4

context of the False Claims Act, a contractor's false certification that its workers were paid prevailing wage pursuant to the Davis-Bacon Act gives rise to FCA liability. 40 USC §276a; 29 CFR Parts 1, 3, 5, 6 and 7.

### B. Relator

21. From 2008 to March 2013, Watry paid Relator to perform, with a crew of laborers, roofing services for Watry for government contract work.

22. From 2008 to March 2013, Watry also employed Ramos on a part-time basis to perform various administrative assistant tasks for Watry Homes, including pulling permits and coordinating materials on government construction projects. Relator owned R&R Exteriors, LLC from July 19, 2007 to May 13, 2011 and she operated Prompt Services, LLC from May 2011 until March 2013, both of which provided roofing crews to perform Watry's non-government roofing construction projects. From 2008-March 2013, Watry exclusively used Ramos to provide and oversee roofing crews on non-government projects.

23. In March 2013, Relator began to understand Watry's scheme to defraud the government and confronted Watry, demanding that Watry Homes and Scott Watry cease their fraud against the Government. Instead of discontinuing the fraud and repaying the amounts fraudulently obtained, Watry abruptly terminated Relator's employment and her exclusive business relationship on non-government roofing projects.

## V. DEFENDANTS' FRAUDULENT CONDUCT

### A. Watry performed work on several U.S. Government funded construction projects.

24. Watry, contracted to perform on government construction work for a variety of projects, including roofing funded through the ARRA, after bragging to Ramos and others that he

5

was going to get some of that "Obama money". From that point, Watry developed the fraudulent scheme of using undocumented laborers to whom he paid less than hourly prevailing wages and Watry thereby expanded his business using the fraudulently obtained federal funds.

25. Watry only employed five or fewer employees at most. He contracted with Campos Flores to run a crew of undocumented workers, whose real identities were unknown to him, and who were not paid anything directly and received cash in an amount less than prevailing wage and unrelated to the number of hours they worked. Watry then concealed his operation by certifying false payroll and other financial reports to the government contractor which appeared to show that Watry employed the employees directly, that they were eligible to work in the U.S., and that they were paid an hourly wage at prevailing rates.

26. Campos Flores provided roofing laborers to Defendants to perform on Watry's government sub-contracts for roofing projects. Watry secured the government construction projects, scheduled the projects, and provided materials to the site. Watry directed Campos Flores to provide laborers to the site on that day to perform the roofing job.

27. Watry then submitted financial and employment reports to the government, which reflected worker identities for which he had obtained false identification, rather than the names of the actual laborers who performed the construction work on the Watry projects.

**City of Milwaukee Projects**

28. In 2011, using the scheme set forth above, Watry subcontracted with Hunzinger Construction Company to perform several construction projects federally funded through the City of Milwaukee Authority of Milwaukee for work on the Westlawn Revitalization Project.

6

29. In 2012, Watry contracted with T.L. Reese, Inc. for federally funded housing construction jobs on several inner city properties, including: 1957 N. 38th Street; 5790 S. 27th Street; 1926 N. 38th Street; 1922 N. 38th Street; 2758 N. 15th Street; 1517 W. Center Street; 2764 N. 16th Street; 814 W. Wright Street; 2529 N. 9th Street; and 2601 W. Wells Street.

**City of Waukesha Housing Authority Projects**

30. In December 2012 and January 2013, using the same scheme described above, Watry contracted with the City of Waukesha Housing Authority for federally funded jobs including: 214 Greenmeadow Drive; 218 Greenmeadow Drive; 1509 Chestnut Drive; 1505 Black Hawk Trail; 1604 Mohawk Drive; 204 Crestwood Drive; 1905 Cardinal Drive; 1909 Cardinal Drive; 1216 Chippewa Drive; 1111-1113 Linden Street; 1339 Greenway Terrace; 1346 Greenway Terrace; 241 N. Grandview Boulevard; and 1109 Caliver Drive, all within the City of Waukesha.

**Beloit Housing Authority Projects**

31. In 2012, using the same scheme described above, Watry contracted through McGann Construction, Inc. for federally funded projects with the Beloit Housing Authority, including 887 Milwaukee Drive; 2715 Scotties Drive; 220 Portland Ave; and 800 6th Street, all of which are in the City of Beloit.

**B. Watry falsified employee records on U.S. Government construction projects.**

32. Watry entered into agreements with the general contractors of the projects described above to provide construction services, including roofing. As a requirement of these agreements, Watry must 1) directly employ documented laborers to perform the roofing

7

construction, 2) pay those employees for each hour of work they perform, and 3) pay them at the federal prevailing wage rate. Watry evaded those requirements and worked a scheme to falsify reports to the government to indicate that he met those requirements.

33. First, Watry must use documented laborers and second, he must directly employ them. Instead, he arranged to purchase fraudulent identifications with names unrelated to the actual laborers who performed the work on the Watry projects. Watry used the names on the false IDs to falsify certified reports to the government and make it appear that he was directly employing workers who performed the government funded work and that they were legally eligible to work in the United States. The actual laborers were located by Campos Flores to perform the work and then paid in cash on a basis unrelated to the hours they worked and in an amount less than prevailing wage.

34. Third, to receive payment for the labor on government projects, the contracts required Watry to pay laborers on an hourly, not a per job basis. Watry arranged for Campos Flores to be paid funds based on roofing "squares" related to the size of the job, without regard to the hours worked. Watry did not maintain or obtain records of the hours each laborer worked. Watry knowingly evaded the requirement and falsified government reports for payment to falsely reflect compliance.

35. Roofers calculate prices for a price sheet based on the pitch of the roof, whether the job is a tear off or new roof, and then the size of the roof. Size is measured by how many bundles of shingles are needed to complete the job. A "square" is three bundles of shingles and Watry paid strictly on a "per square" basis, with adjustments for pitch and other factors, but not based on hours worked.

8

36. Fourth, to receive payment for the labor on government projects, Davis-Bacon requires that Watry pay prevailing wage, which is based on hours worked by each individual employee. Watry did not know or care how many hours of work each worker performed, as he paid Flores a flat total amount on a "per square" basis described above, not on the basis of prevailing wage on any government-funded job. The workers were in turn paid in cash from the crew boss in an amount less than prevailing wage.

37. The Copeland "Anti-kickback" Act, 18 U.S.C. 874 et seq. ("AKA") generally prohibits federal contractors or subcontractors engaged in building construction or repair from inducing an employee to give up any part of the compensation to which he or she is entitled under his or her employment contract and requires such contractors and subcontractors to submit weekly statements of compliance.

38. Watry falsely reported that he had employees performing roofing work under Government contracts by falsifying weekly payroll as set forth above.

39. Watry was paid under the said government contracts pursuant to his falsified payroll records as if he had employed documented employees and paid prevailing wage per hour of work when, in fact, he contracted with others and directed them to obtain false identification for employees for Watry's falsely certified payroll records.

40. Employees listed on Watry's certified payroll as prevailing wage workers specifically on roofing jobs were Heather Ramos, Manuel Lara Mendez, Modesto Campos, Pedro Manuel Meja, Jose Luis Campos Flores, Roberto Vivanco, Bernardino Campos, Jose Velzaquez, Albert Garrido and Dulce Garcia. Most of these employees, including at least Heather Ramos, Dulce Garcia, and Albert Garrido never performed any work for Campos Flores or any work on Watry's government projects. However, Watry would still complete the falsified payroll stating

9

that they had performed work, because they were documented, and Watry would direct such individuals to cash checks and turn over cash to satisfy underpayments to the undocumented laborers who actually did the construction work. Watry made paychecks payable to Manuel Lara Mendez, Modesto Campos, Pedro Manuel Meja, Jose Luis Campos Flores, Roberto Vivanco, Bernardino Campos, and Jose Velzaquez, or individuals using those names, without regard to hours worked, if any.

### C. Defendants terminated the employment and business relationship with Relator because she attempted to have him cease his illegal schemes and refused to be part of them going forward.

41. Watry ended his business and employment relationship with Ramos on March 7, 2013. At that time, Watry employed Ramos as an employee to perform several odd jobs for him, such as pulling permits and running errands. Watry also had an agreement with Ramos that she would be the exclusive company for his roofing labor on all of his private roofing jobs.

42. Ramos repeatedly stated to Watry that she did not want to be part of the illegal conduct with the government jobs and that he should cease such conduct of defrauding the government to obtain funds. Thereafter Watry severed his relationships with Ramos.

## VI. CLAIMS

### COUNT ONE
### DEFENDANTS PRESENTING FALSE CLAIMS FOR ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

43. Relator re-alleges and incorporates by reference all previous paragraphs.

44. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

45. For the purposes of the FCA, "the terms 'knowing' and 'knowingly' mean that a person, ... (1) has knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts in reckless disregard of the truth or falsity of the information and no proof of specific intent to defraud is required." 31 U.S.C. 3729(b).

46. Through the acts described above including knowingly presenting false payroll reports to the government stating that their construction laborers could legally work in the United Stated and that the laborers were paid required prevailing wages, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval.

47. The United States has been damaged by all of the above fraud and illegal conduct in an as of yet undetermined amount, including the amount of compensation paid to Watry in relation to the government contracts.

## COUNT TWO
## DEFENDANTS PRESENTING FALSE CLAIMS FOR ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(B)

48. Relator re-alleges and incorporates by reference all previous paragraphs.

49. The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

50. Through the acts described above, Defendants knowingly made, used, and/or caused to be made or used a false record or statement material stating that their construction laborers could legally work in the United States and that the laborers were paid required

11

prevailing wages to a false or fraudulent claim to the United States in order to obtain reimbursement for services otherwise not deserving of government reimbursement.

51. The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, contract, and agreements in an as of yet undetermined amount.

52. With respect to the aforementioned misrepresentations and failures to comply, Defendants knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Defendants received such compensation from the United States Government as a result of Defendants' false claims.

## COUNT THREE
## DEFENDANTS PRESENTING FALSE CLAIMS FOR ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(C)

53. Relator re-alleges and incorporates by reference all previous paragraphs.

54. The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability on any person who conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G).

55. Defendants have engaged in illegal labor racketeering crimes through the conspiracy with Campos Flores to collect Federal funding for the purposes of personal profit.

56. Defendants knowingly submitted false claims to the United States when Defendants conspired in the billing practices, as described above, for the purposes of obtaining compensation to which they would otherwise not be entitled.

57. The United States has been damaged by all of the aforementioned fraud and illegal conduct in an as of yet undetermined amount.

58. With respect to the aforementioned misrepresentations and failures to comply, Defendants knowingly made false claims to officials of the United States for the purpose of

12

Case 2:13-cv-00926-RTR   Filed 08/16/13   Page 12 of 16   Document 1

obtaining compensation and Defendants received such compensation from the United States as a result of Defendants' said false claims.

## COUNT FOUR
## DEFENDANTS PRESENTING FALSE CLAIMS FOR ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(G)

59. Relator re-alleges and incorporates by reference all previous paragraphs.

60. The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

61. Through the acts described above, by knowingly concealing money that was owed to the Government when, after Ramos told Defendants that they were not paying the laborers legally, Defendants kept the profit they made of the government contracts, Defendants knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government.

62. The United States has been damaged by all of the above fraud and illegal conduct in an as of yet undetermined amount.

63. Defendants knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Defendants received such compensation from the Government as a result of Defendants' false claims.

## COUNT FIVE
## RETALIATORY DISCRIMINATION PURSUANT TO 31 U.S.C. § 3730(H)

64. Relator re-alleges and incorporates by reference all previous paragraphs.

13

65. Defendants discharged Relator almost immediately after Relator attempted to cause Defendants to cease submitted fraudulent claims to the Government.

66. Through Defendants' above acts, Defendants discriminated against in retaliation because of her said covered conduct.

67. Defendants' conduct caused Relator to suffer damages and she is entitled to damages and relief including, but not limited to, reinstatement as an employee and as a contractor; two (2) times the amount of back pay and business loss, interest on the back pay and business loss, and compensation for special damages sustained as a result of the retaliatory conduct, including litigation costs and attorneys' fees.

## COUNT SIX

### Violations of the Copeland Act for not paying prevailing wages

68. Relator re-alleges and incorporates by reference all previous paragraphs.

69. The Copeland "Anti-Kickback" Act 18 U.S.C. § 874 generally prohibits federal contractors or subcontractors engaged in building construction or repair from inducing an employee to give up any part of the compensation to which he or she is entitled under his or her employment contract and requires such contractors and subcontractors to submit weekly statements of compliance.

70. Defendants, through the practices described above, violated the Copeland Act by inducing employees, who performed work on government-funded construction jobs, to work without being paid the prevailing wage earnings and allowing Defendants to retain the earnings in exchange for allowing the laborers some work and some pay.

14

## **PRAYER FOR RELIEF**

WHEREFORE, the United States is entitled to damages from Defendants in accordance with the provisions of 31 U.S.C. §§ 3729-3733, as amended, of which up to twenty-five percent (25%) should be paid to the *qui tam* plaintiff, Heather Ramos, and such further relief as this Court may deem appropriate or proper.

AND WHEREFORE, Plaintiff/Relator requests that judgment be entered against Defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*;

b. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against each Defendant of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. Plaintiff/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) as *qui tam* Plaintiff;

d. Defendants pay damages to Relator for her employment and business loss, personal injury and special damages suffered as a result of unlawful retaliation in violation of 31 U.S.C. § 3730(h), including but not limited to two times the amount of back pay, benefits, and business loss and interest thereon, and compensation for special damages sustained as a result of the discrimination, including litigation costs and attorneys' fees;

e. Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

f. United States and Plaintiff/Relator be granted all such other relief as the Court deems just and proper.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF/RELATOR DEMANDS THE ABOVE ENTITLED ACTION TO BE TRIED TO A 12-PERSON JURY.**

Dated this 16th day of August 2013.

**CROSS LAW FIRM, S.C.**
**Attorneys for Plaintiff**

By: /s/ Nola J. Hitchcock Cross

Nola J. Hitchcock Cross
State Bar No. 1015817
Katherine M. Gaumond
State Bar No. 1088722

Cross Law Firm, S.C.
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055
njhcross@crossalawfirm.com
kgaumond@crosslawfirm.com
www.crosslawfirm.com